**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-00009-NYW-CYC
*Consolidated with Civil Action No. 25-cv-00448-NYW-CYC*

JANE DOE, individually and on behalf of those similarly situated,
KIMBERLY GIBSON, individually and on behalf of those similarly situated,
JASON MARKOWITZ, individually and on behalf of those similarly situated, and
ALEXANDRA KUMOR, individually and on behalf of those similarly situated,

      Plaintiffs,

v.

CONCEPTIONS REPRODUCTIVE ASSOCIATES, INC. d/b/a CONCEPTIONS
REPRODUCTIVE ASSOCIATES OF COLORADO, and
IVI AMERICA, LLC,

      Defendants.

_____

**MEMORANDUM OPINION AND ORDER**
_____

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint ("Motion to Dismiss" or "Motion"). [Doc. 28]. Plaintiffs have responded in opposition, [Doc. 31], and Defendants have replied, [Doc. 33]. Upon review, the Court concludes that oral argument would not materially assist in the disposition of the Motion.[1] For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

---

[1] In their Motion, Defendants requested oral argument in order to address "any questions or concerns the Court may have after reviewing the parties' written submissions." [Doc. 28 at 38]. Plaintiffs did not address this request in their response brief. *See* [Doc. 31].

**BACKGROUND**

The following facts are drawn from the operative Consolidated Class Action Complaint ("Consolidated Complaint"), [Doc. 24], and taken as true for purposes of the Motion.

***Defendants and the Data Breach.*** Defendants Conceptions Reproductive Associates, Inc. d/b/a Conceptions Reproductive Associates of Colorado ("Conceptions") and IVI America, LLC ("IVI") (together, "Defendants") provide fertility-related healthcare services to patients in Colorado. [*Id.* at ¶ 17]. Plaintiffs allege that IVI owns and operates Conceptions. [*Id.* at ¶ 13]. Like many healthcare providers, Defendants receive and maintain the personal identifying information ("PII") and personal health information ("PHI") of their patients. [*Id.* at ¶ 18]. Conceptions publishes policies acknowledging federal and state law regulating PII and PHI. *See* [*id.* at ¶¶ 21–24]. In its Privacy Policy, Conceptions represents that "[w]e have implemented appropriate and reasonable technical and organizational security measures designed to protect the security of any personal information we process." [*Id.* at ¶ 21(d)]. But despite this and other similar representations, Defendants allegedly failed to comply with industry and regulatory standards for protecting the PII and PHI in their possession. [*Id.* at ¶¶ 148–55].

In mid-April 2024, cybercriminals hacked Defendants' computer systems and accessed the PII and PHI of thousands of Defendants' current and former patients (the "Data Breach"). [*Id.* at ¶¶ 25–30]. The cybercriminals behind the Data Breach appear to be "INC Ransom," an "especially notorious cybercriminal group." [*Id.* at ¶¶ 40–41]. On April 16, 2024, INC Ransom posted on the dark web that it had a "huge amount of data from [Conceptions]," and stated that "[i]n the event that we do not come to an agreement,

all data will be published." [*Id.* at ¶¶ 44–45]. Less than two weeks later, INC Ransom published the data, "such that other cybercriminals could 'View' and seemingly download the entirety of the stolen PII/PHI." [*Id.* at ¶ 45].

Defendants first notified the relevant patients of the Data Breach on November 6, 2024. [*Id.* at ¶ 31; Doc. 24-1]. The notice letter told patients that "[a]lthough we have seen no evidence of any fraud, identity theft, or other such misuse of your information in the wake of the [Data Breach], it is always a good idea for all of us to be vigilant, including to regularly review account statements, and to monitor free credit reports for any suspicious activity and to detect errors." [Doc. 24-1 at 3]. Plaintiffs claim that Defendants' notice letter "misleadingly" "downplayed the severity of the Data Breach" because, at that time, their PII and PHI was already published on the dark web. [Doc. 24 at ¶¶ 45–46].

**Plaintiffs and their Alleged Injuries.** Plaintiffs Jane Doe,[2] Kimberly Gibson, Jason Markowitz, and Alexandra Kumor (together, "Plaintiffs") are former patients of Defendants. [*Id.* at ¶¶ 48, 68, 87, 106]. Plaintiffs allege that they are careful with their PII and PHI and provided their information to Defendants on the understanding that Defendants would "use reasonable measures to protect it." [*Id.* at ¶¶ 51–52, 71–72, 90–91, 109–10]. Plaintiffs also "reasonably understood" that a portion of their payments to Defendants "would be used to pay for adequate cybersecurity and protection of PII/PHI." [*Id.* at ¶¶ 53, 73, 92, 111]. And because all four Plaintiffs received a "Notice of Data Breach" from Defendants, they allege that their PII and PHI have been (or will be) published on the dark web. [*Id.* at ¶¶ 54–55, 75–76, 93–94, 113–14].

Since the Data Breach, Plaintiffs allege that they have experienced a "spike in

---

[2] The Court granted Ms. Doe leave to proceed under a pseudonym. [Doc. 19].

spam and scam" messages by email, text message, and phone call. [*Id.* at ¶¶ 60, 79, 98, 117]. Plaintiffs have spent "significant time and effort" monitoring their accounts for potential fraud or identity theft and have suffered "anxiety, sleep disruption, stress, fear, and frustration." [*Id.* at ¶¶ 58, 61–62, 78, 80–81, 96, 99–100, 116, 118–19]. Ms. Doe has additionally received notifications that unknown parties were attempting to log in and access her various online accounts. [*Id.* at ¶ 57]. And Mr. Markowitz has enrolled in dark web monitoring for his personal information, costing over $100 per year. [*Id.* at ¶ 99].

***Procedural Background.*** Ms. Doe initiated this case in January 2025. [Doc. 1]. At her and Ms. Gibson's request, the Court consolidated this case with a related case filed by Ms. Gibson. [Doc. 19]. Plaintiffs then filed the operative Consolidated Complaint. [Doc. 24]. They seek to represent a proposed class of individuals whose PII and PHI was compromised in the Data Breach. [*Id.* at ¶ 156]. Plaintiffs bring eight claims: (1) negligence; (2) negligence per se, based on alleged violations of HIPAA, the Federal Trade Commission ("FTC") Act, and the Colorado Security Breach Notification Act ("CSBNA"), Colo. Rev. Stat. § 6-1-716; (3) breach of implied contract; (4) invasion of privacy; (5) unjust enrichment; (6) breach of fiduciary duty; (7) violation of the Colorado Consumer Protection Act ("CCPA"), *see* Colo. Rev. Stat. §§ 6-1-105, -113; and (8) declaratory judgment. *See* [*id.* at ¶¶ 166–271]. Defendants move to dismiss all eight claims for failure to state a claim. [Doc. 28].

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and

4

view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Defendants argue that Plaintiffs fail to state a claim for relief under Colorado law, without raising any choice of law issues. *See* [Doc. 28]. Plaintiffs also invoke Colorado law without discussion. *See* [Doc. 31]. Because the Parties' arguments assume that Colorado law applies, the Court "will proceed under the same assumption." *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008).

As a federal court sitting in diversity, the Court's role is to "ascertain and apply" Colorado law with the objective of reaching the same result that would be obtained in state court. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 930 (10th Cir. 2018) (quotation omitted). Where the Colorado Supreme Court has not yet ruled on an issue, the Court follows decisions from the Colorado Court of Appeals "absent convincing evidence that the highest court would decide otherwise*." Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir.

2011) (quotation omitted).  In predicting how the Colorado Supreme Court would rule, the Court may also consider other state and federal decisions, as well as the "general weight and trend of authority."  *Siloam Springs*, 906 F.3d at 930–31 (quotation omitted).

With these principles in mind, the Court addresses Plaintiffs' claims in numerical order and then considers the Parties' arguments regarding punitive damages.

## I.    Counts One and Two:  Negligence and Negligence Per Se

To state a claim for negligence, Plaintiffs must plausibly allege that (1) Defendants owed them a legal duty; (2) Defendants breached that duty; (3) Plaintiffs suffered damages; and (4) Defendants' breach caused those damages.  *See English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) (citation omitted).  Negligence per se offers an alternative method of establishing the first two elements.  *Bullock v. Wayne*, 623 F. Supp. 2d 1247, 1252 (D. Colo. 2009).  "[N]egligence per se occurs when the defendant violates a statute adopted for the public's safety and the violation proximately causes the plaintiff's injury."  *Scott v. Matlack*, 39 P.3d 1160, 1166 (Colo. 2002).  A plaintiff must also "demonstrate that the statute was intended to protect against the type of injury she suffered and that she is a member of the group of persons the statute was intended to protect."  *Id.*

Defendants argue that Plaintiffs' negligence per se claim fails because they have failed to identify an appropriate statute.  [Doc. 28 at 17–19].  They also argue that both the negligence and negligence per se claims fail because Plaintiffs have not adequately alleged injuries and causation.  [*Id.* at 19–23].  Because the injury and causation arguments apply to both claims, the Court addresses those issues before turning to the arguments specific to the negligence per se claim.

**A.    Cognizable Injury**

Defendants next argue that Plaintiffs' "harms" are not "compensable injuries." [Doc. 28 at 20].  Defendants note that they do not challenge Plaintiffs' standing to sue, although they argue that the standing analysis is "similar" to the question of whether Plaintiffs have adequately pled an injury.  [*Id.* at 20 n.35].  Plaintiffs respond that they have adequately alleged an injury based on "physical manifestations" of "emotional injuries." [Doc. 31 at 12].  They also argue that they suffered various other injuries, "misuse of their PII/PHI, invasions of privacy, increased risk of identity theft and fraud, lost time, property damage, and out-of-pocket losses."  [*Id.*].

As an initial matter, the Court notes that the Parties' reliance on standing cases is largely misplaced.  *See* [Doc. 28 at 20; Doc. 31 at 12].  To have standing to sue under Article III of the Constitution, a party must have an "injury in fact"—i.e., an invasion of a legally protected interest that is concrete and particularized and not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).[3]  However, a party may suffer a constitutionally sufficient injury-in-fact yet still lack an injury cognizable under a particular theory of liability.  *See Doe v. Chao*, 540 U.S. 614, 624–25 (2004).  As the Second Circuit explained, "an injury-in-fact differs from a 'legal interest'; an injury-in-fact need not be capable of sustaining a valid cause of action under applicable tort law." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  While a party's injury-in-fact may also supply a recoverable injury in many cases, the Court will not presume

---

[3] The Court has independently reviewed the Consolidated Complaint and determined that Plaintiffs adequately allege an injury-in-fact for standing purposes.  *See, e.g., In re Progressive Leasing Breach Litig.*, No. 2:23-cv-00783-DBB-CMR, 2025 WL 213744, at *6–12 (D. Utah Jan. 16, 2025).

that the law of damages in Colorado overlaps with the test for injury-in-fact.  Accordingly, the Court grounds its analysis of Plaintiffs' alleged injuries in Colorado tort law.

Under Colorado law, a negligence claim requires "actual loss or damage resulting to the interests of the plaintiff."  *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 242 (Colo. 1987).  Generally, "negligence is not actionable in Colorado unless it results in physical damage to persons or property."  *Adams-Arapahoe Sch. Dist. No. 28-J v. GAF Corp.*, 959 F.2d 868, 871 (10th Cir. 1992).  Emotional distress is thus actionable on its own if the distress "result[ed] in physical manifestations or mental illness."  *Towns v. Anderson*, 579 P.2d 1163, 1164–65 (Colo. 1978).  Economic losses are also recoverable so long as the underlying duty did not arise from a contract.  *See Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).  But a mere risk of future harm, without more, is not the type of damage that is recoverable through a negligence claim.  *Adams-Arapahoe*, 959 F.2d at 872.  And where the fact of damages—as opposed to the amount—is uncertain, Colorado law requires damages to be "reasonably ascertainable" and not "speculative" or "remote" to be cognizable.  *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 873 (Colo. 2002).

Plaintiffs point to a few possible sources of cognizable damages.  First, they allege that they suffered damages based on the "anxiety," "sleep disruption," and other distress that they experienced after the Data Breach.  [Doc. 31 at 12].  But Plaintiffs' allegations of their emotional distress are conclusory, boilerplate, and unsupported by any actual alleged facts regarding each Plaintiff's symptoms.  *See* [Doc. 24 at ¶¶ 62, 81, 100, 119].  In other words, Plaintiffs provide the sort of list of "generalized symptoms such as headaches, insomnia, [and] crying spells" that courts have found to be insufficient.

8

*Atsepoyi v. Tandy Corp.*, 51 F. Supp. 2d 1120, 1127 (D. Colo. 1999).  This does not establish the "physical manifestations or mental illness" required to recover for non-economic damages on their own.  *Towns*, 579 P.2d at 1164–65; *cf. Owen-Brooks v. DISH Network Corp.* ("*Owen-Brooks I*"), No. 23-cv-01168-RMR-SBP, 2024 WL 4338133, at *15–16 (D. Colo. Aug. 23, 2024) (finding that allegations of "chronic migraines and lack of sleep" were sufficiently serious physical manifestations to sustain negligence claim under Colorado law), *recommendation adopted*, 2024 WL 4333660, at *2 (D. Colo. Sept. 27, 2024).

Second, Plaintiffs reference a host of "other injuries" that they contend are cognizable in negligence:  "misuse of their PII/PHI, invasions of privacy, increased risk of identity theft and fraud, lost time, property damage, and out-of-pocket losses."  [Doc. 31 at 12].  Plaintiffs do not explain this argument and cite no Colorado law holding that any of these "other injuries" can sustain a negligence claim absent an actual physical or economic injury.  *See* [*id.*].  Rather, Plaintiffs appear to conflate the broad spectrum of damages that may be awarded in conjunction with a cognizable harm with the narrower range of cognizable harms that give rise to a negligence claim.  [*Id.* (citing Colo. Model Jury Instructions, Civ. § 6:1 (4th ed., Apr. 2025 update) (general damages instruction for personal injury cases))].  With respect to "misuse" of PII and PHI and "invasions of privacy," Plaintiffs do not address how these supposed harms could constitute an actual, standalone injury for negligence purposes, and the Court need not make Plaintiffs' arguments for them.[4]  *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015)

---

[4] As explained below, the required mental states for Plaintiffs' invasion of privacy theories are higher than negligence.  *See infra* at 22–24.  Absent any non-conclusory argument from Plaintiffs, the Court declines to let them end-run those requirements by claiming

("[I]t is not this [C]ourt's duty, after all, to make arguments for a litigant that he has not made for himself.").  Moreover, as explained above, a risk of future harm is insufficient on its own to sustain a negligence claim.  *Adams-Arapahoe*, 959 F.2d at 872.  Plaintiffs provide no argument or authority to support a departure from this general rule.

As for "lost time" spent dealing with the Data Breach, the Court's independent research revealed no Colorado cases precisely on point.[5]  But other federal courts have held that "lost time" is not cognizable in negligence, absent at least a connection to lost wages.  *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 307, 327–28 (S.D.N.Y. 2018) (concluding that "most states do not treat lost personal time as a compensable form of injury," and observing that Colorado common law generally equates "lost time" with "lost income" (collecting cases)); *Smallman v. MGM Resorts, Int'l*, 638 F. Supp. 3d 1175, 1190 (D. Nev. 2022) ("Lost time alone does not establish compensable damages." (citations omitted)); *Landon v. TSC Acquisition Corp.*, No. 2:23-cv-01377-SVW-PD, 2024 WL 5317240, at *6 (C.D. Cal. Nov. 1, 2024) (reiterating that lost time is "too speculative to be cognizable harm").  To be sure, there is no nationwide consensus on this issue.[6]  But considering the basic principles of Colorado damages law, the Court

_____

"invasion of privacy" as the injury supporting a negligence claim.  And Plaintiffs' reference to alleged "misuse" of their data conflates the standing analysis with tort law regarding damages.  [Doc. 31 at 12]; *see Owen-Brooks I*, 2024 WL 4338133, at *7–9, *15 (discussing "actual misuse" as a viable injury-in-fact but not as a cognizable injury for a negligence claim).

[5] The cases relied on by Defendant, which dealt with these issues in the standing context, are inapposite.  *See* [Doc. 28 at 20 & n.36; Doc. 33 at 19–20].

[6] *See, e.g.*, *Johnson v. Nice Pak Prods., Inc.*, 736 F. Supp. 3d 639, 648 (S.D. Ind. 2024) (concluding that time spent monitoring financial accounts is an injury-in-fact, and finding "no difference" between injury-in-fact and compensable damages under Indiana tort law); *Jimenez v. OE Fed. Cred. Union*, No. 24-cv-02746-JST, 2025 WL 2402137, at *3–4 (N.D. Cal. Aug. 19, 2025) (collecting cases from district courts within the Ninth Circuit that have found that time spent responding to a data breach is sufficiently non-speculative to

respectfully concludes that lost time, standing alone, is too speculative and attenuated from actual pecuniary or physical damages to sustain a negligence claim.

Plaintiffs next argue that they suffered "property damage" from the Data Breach. [Doc. 31 at 12].  Some courts have recognized that cognizable damages may flow from the diminished value of a plaintiff's personal data.  *See, e.g.*, *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 70–71 (S.D.N.Y. 2022) (finding that plaintiff failed to plausibly allege damages based on lost value where she did not "allege she could have monetized her PII or that her PII was actually monetized"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460–62 (D. Md. 2020) (approving lost value theory where plaintiffs alleged that their data had economic value and that they suffered lower credit scores and identity theft after data breach, and reasoning that the value of personal data stems from "the economic benefit the consumer derives from being able to purchase goods and services remotely and without the need to pay in cash or a check"). *See generally* Meal, *supra* note 6, at 376–77 & n.38 (collecting diverging cases).  But the Court need not consider whether the Colorado Supreme Court would endorse any damages theory based on the diminished value of PII and PHI.  Plaintiffs submit no theory of lost value in their Consolidated Complaint or in their briefing, and offer nothing more than the bare allegation that their personal data experienced a "diminution in value."  *See* [Doc. 24 at ¶¶ 64, 83, 102, 121, 126(b)].  Because this is insufficient to plausibly allege any non-speculative theory of damages, the Court need not go further.

---

support a negligence claim).  *See generally* Douglas H. Meal, *Rethinking Negligence Claims in Cyberattack Class Actions:  Teachings of the Third Torts Restatement Regarding Actionable Injury*, 26 Sedona Conf. J. 357, 381–85 (2025) (summarizing disagreement among federal courts over whether "impactful non-economic injuries," such as lost time, are recoverable in cyberattack class actions).

11

That leaves the out-of-pocket costs Mr. Markowitz incurred by signing up for credit monitoring services after the Data Breach.  [*Id.* at ¶ 99].  Defendants suggest that "self-protective steps voluntarily taken" after a data breach are not cognizable, but they rely only on inapposite standing cases.  [Doc. 28 at 20 & n.37].  Because an injured party is obligated to take reasonable steps to mitigate his damages, *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 680 (Colo. 1994), Colorado tort law "recognizes that an injured party, who incurs expense in pursuing reasonable efforts to avoid or minimize the damaging effects of another's wrong, may recover for such expense as one of the items of damage for the wrong," *Banning v. Prester*, 317 P.3d 1284, 1288 (Colo. App. 2012).  Other federal courts have similarly—although not unanimously—concluded that monitoring costs after a data breach can sustain a negligence claim.[7]  Viewing the allegations in the light most favorable to Plaintiffs, the Court respectfully concludes that they have plausibly alleged that Mr. Markowitz reasonably incurred monitoring costs to mitigate or avoid further harm from the Data Breach.  Unlike Plaintiffs' other alleged damages, this is an actual, non-speculative economic loss that gives rise to a negligence claim under Colorado law.

Accordingly, the Motion is respectfully **DENIED** as to the negligence and negligence per se claims by Mr. Markowitz based on his out-of-pocket expenses, and **GRANTED** as to the negligence and negligence per se claims by the other Plaintiffs.

---

[7] *See, e.g. Rand*, 637 F. Supp. 3d at 70 ("Generally, fees paid to freeze credit reports and costs incurred in purchasing credit monitoring and identity theft services are cognizable expenses incurred for the purpose of avoiding further data-breach-related damages."); *Smallman*, 638 F. Supp. 3d at 1192 (concluding that plaintiffs who purchased identity protection services had alleged a cognizable negligence claim).  *But see, e.g.*, *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1021 (D. Minn. 2006) (finding monitoring costs not cognizable because plaintiffs' "expenditure of time and money was not the result of any present injury, but rather the anticipation of future injury that has not materialized").

Counts One and Two are **DISMISSED** as to all other Plaintiffs. The Court proceeds to the Parties' remaining arguments on Counts One and Two only as they relate to Mr. Markowitz.

### B.    Causation

Negligence and negligence per se claims include the same causation element. *Neptune-Otto v. Triumph Props., L.L.C.*, No. 21CA0968, 2022 WL 22924565, at *5 (Colo. App. Dec. 22, 2022) (citing *Matlack*, 39 P.3d at 1166). Causation comprises two components: "cause in fact" and "legal" or "proximate cause." *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 467 P.3d 287, 292 (Colo. 2020). Defendants challenge both components, and the Court addresses them in order.

Cause in fact is typically evaluated using the "but for" test, which requires a plaintiff to allege that "but for the alleged negligence, the harm would not have occurred." *Deines v. Atlas Energy Servs. LLC*, 484 P.3d 798, 801 (Colo. App. 2021). Defendants claim that Plaintiffs fail to link their harms to the Data Breach, such as by specifying the "timing of when the claimed harms arose vis-à-vis the [Data Breach]." [Doc. 28 at 21]. Defendants suggest that Plaintiffs' harms could have arisen from another data breach. [*Id.*].

The Court respectfully disagrees. Plaintiffs allege that Defendants' deficient cybersecurity caused the Data Breach. [Doc. 24 at ¶¶ 148–55; Doc. 31 at 13]. They further allege that Mr. Markowitz "fears for his personal financial security and worries about what information was exposed in the Data Breach. [Mr.] Markowitz further pays for dark web monitoring for his Private Information through several services, costing over $100 annually." [Doc. 24 at ¶ 99]. This allegation occurs in the context of other allegations detailing the aftermath of the Data Breach for Mr. Markowitz. [*Id.* at ¶¶ 95–100]. Although

Plaintiffs do not expressly state that Mr. Markowitz enrolled in monitoring services because of the Data Breach, that is the clear implication in the factual allegations, and the Court is bound to view those allegations in the light most favorable to Plaintiffs. And while the Court appreciates that data breaches are all too common, *see* [*id.* at ¶¶ 135–38], there is no indication in the record that Mr. Markowitz experienced any other events that would motivate him to purchase dark web monitoring services. Thus, at this early stage, the Court respectfully concludes that Plaintiffs have adequately alleged that but for the Data Breach, Mr. Markowitz would not have incurred any expenses for monitoring services.

The Court reaches the same conclusion for proximate cause. To satisfy this requirement, a plaintiff must plausibly allege that "the negligence was a 'substantial factor' in producing the harm." *N. Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996) (quotation omitted). Defendants contend that Plaintiffs have not adequately alleged that the Data Breach was a substantial factor in causing their harms, as opposed to the harms being "diluted by the near-certain involvement of their data in multiple other breaches, leaks, etc. over time." [Doc. 28 at 22]. To be sure, this argument could apply to other asserted injuries that the Court has already rejected, such as increased spam calls. But, as explained, the Data Breach and Mr. Markowitz's resulting concern for his data are the sole alleged factors in his decision to enroll in monitoring services. The Court respectfully concludes that the Data Breach resulting from Defendants' allegedly deficient cybersecurity was a substantial factor in causing Mr. Markowitz's credit monitoring expenses. Plaintiffs have thus adequately alleged proximate cause as to the surviving portions of Counts One and Two.

14

However, the Court agrees with Defendants that, to the extent the negligence per se claim arises from an alleged breach of the CSBNA, Plaintiffs have failed to adequately allege causation.  [Doc. 28 at 23].  The CSBNA requires entities who suffer a security breach regarding stored personal data to notify the affected individuals no "later than thirty days after the date of determination that a security breach occurred."  Colo. Rev. Stat. § 7-1-716(2)(a).  Plaintiffs allege that Defendants waited more than 200 days after the breach to provide notice.  [Doc. 24 at ¶ 198].  But there is no allegation that the delay in notice played any role in Mr. Markowitz's decision to purchase monitoring services, let alone that the delay was a "but for" cause of such harms.  Mr. Markowitz therefore fails to satisfy the causation element insofar as Count Two is premised on a violation of the CSBNA, and that portion of Count Two is respectfully **DISMISSED**.

### C.    Statutory Basis for the Negligence Per Se Claim

Defendants next raise three additional arguments challenging whether Plaintiffs can sustain a claim for negligence per se under HIPAA or the FTC Act:  (1) that a statute must include a private right of action to support a negligence per se claim; (2) that the FTC Act is too broad to support such a claim; and (3) that Plaintiffs cannot base a negligence per se claim on administrative regulations and guidelines.  [Doc. 28 at 18–19]. The Court addresses these arguments in turn.

***Private Right of Action.***    First, Defendants argue that Plaintiffs cannot bring negligence per se claims based on HIPAA and the FTC Act because neither statute contains a private right of action.  [Doc. 28 at 18].  Defendants point to no Colorado law recognizing such a rule.  As Defendants concede, other courts in this District have authorized negligence per se claims based on statutes that do not include a private right

15

of action.  [*Id.* at 18 & n.29]; *see Owen-Brooks v. DISH Network Corp.* ("*Owen-Brooks II*"), No. 23-cv-01168-RMR-SBP, 2024 WL 4333660, at *2 (D. Colo. Sept. 27, 2024) (citing *Dolin v. Contemp. Fin. Sols., Inc.*, 622 F. Supp. 2d 1077, 1085 (D. Colo. 2009)).  Indeed, negligence per se claims based on violations of traffic ordinances—which rarely, if ever, contain private rights of action—are well established in Colorado.  *See, e.g.*, *Kelley v. Holmes*, 470 P.2d 590, 591 (Colo. App. 1970) ("[V]iolation of a traffic ordinance constitutes negligence per se." (citing *Lambotte v. Payton*, 363 P.2d 167 (Colo. 1961)).  The Court respectfully declines to impose a newfound requirement on negligence per se claims under Colorado law.

*Prohibition of Specific Acts.*  Second, Defendants contend that § 5 of the FTC Act is too broad to sustain a negligence per se claim.  [Doc. 28 at 18–19].  In relevant part, that provision prohibits "unfair . . . practices in or affecting commerce."  15 U.S.C. § 45(a)(1).  Defendants view this provision as only a "general prohibition" rather than a prohibition on any specific conduct.  [Doc. 28 at 19 (citing *Gordon v. Chipotle Mexican Grill, Inc.* (*Gordon I*), No. 17-cv-01415-CMA-MLC, 2018 WL 3653173, at *20 (D. Colo. Aug. 1, 2018), *recommendation aff'd in relevant part and rejected in part*, 344 F.Supp.3d 1231, 1246 (D. Colo. 2018))].  Although they do not specifically recite the rule, Defendants are correct that, to give rise to a claim of negligence per se, "the statute in question must prohibit or require a particular act."  *Bauer v. Sw. Denv. Mental Health Ctr., Inc.*, 701 P.2d 114, 118 (Colo. App. 1985) (citing *Dunbar v. Olivieri*, 50 P.2d 64 (Colo. 1935), *overruled on other grounds by Mile High Fence Co. v. Radovich*, 489 P.2d 308 (Colo. 1971)).  "In other words, the relevant statute needs to prescribe or proscribe some relatively discrete action," such that the defendant's violation can be "clearly established."  *Hendrickson v.*

*Doyle*, 150 F. Supp. 3d 1233, 1239 (D. Colo. 2015) (citing *Lyons v. Nashby*, 770 P.2d 1250, 1257–58 (Colo. 1989)).

Plaintiffs do not directly address this issue. [Doc. 31 at 14]. Instead, they point only to the district court's conclusion in *Owens-Brooks II* that a violation of the FTC Act was sufficient to state a claim for negligence. [*Id.* (citing *Owens-Brooks II*, 2024 WL 4333660, at *2–3)]. But the defendants in *Owens-Brooks* argued that the plaintiffs were not among the class of persons that the FTC Act is intended to protect, not that § 5 of the FTC Act is too broad to supply a basis for a negligence per se claim. *See Owens-Brooks II*, 2024 WL 4333660, at *2; *Owens-Brooks I*, 2024 WL 4338133, at *17. So those decisions are not instructive on this point.

The Court respectfully agrees with Defendants that the FTC Act's general prohibition on "unfair" commercial practices cannot support a claim for negligence per se under Colorado law. As the Third Circuit has explained, unfairness is a "flexible concept with evolving content." *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243–46 (3d Cir. 2015) (discussing the breadth of the term and tracing the FTC's changing interpretations of unfairness over time); *see also Owens-Brooks I*, 2024 WL 4338133, at *17 (observing that this portion of § 5 is "quite broad"). The sheer subjectivity of the term "unfair" means this provision is devoid of any specific, objective standards that could be used to "clearly establish[]" a violation. *Hendrickson*, 150 F. Supp. 3d at 1239. Because the unfairness standard is so broad, the Court cannot conclude that this portion of § 5 prohibits any particular act. *See Bauer*, 701 P.2d at 118. Other federal courts applying comparable state law rules have reached the same conclusion. *See, e.g.*, *Gordon I*, 2018 WL 3653173, at *20 (applying Arizona, Colorado, and Missouri law); *In re NCB Mgmt. Servs.,*

*Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 281–82 (E.D. Pa. 2024) (Pennsylvania law); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-02807-JSG, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020) (Oklahoma law); *Duffy v. Lewis Bros. Bakeries, Inc.*, 760 F. Supp. 3d 704, 723 (S.D. Ind. 2024) (concurring with *Sonic Corp.* and dismissing claims based on Indiana law) . Accordingly, the Motion is **GRANTED** as to Mr. Markowitz's negligence per se claim based on the FTC Act, and this portion of Count Two is **DISMISSED**.

  ***Reliance on Regulations and Guidelines.*** Third, Defendants argue that Plaintiffs cannot stake a negligence per se claim on administrative regulations and guidelines that are not "statutory in nature." [Doc. 28 at 19]. Defendants cite no Colorado law to support this point. With respect to regulations, Colorado law recognizes that "legislative enactments *and administrative regulations* may, in some cases, establish the applicable standard of care in negligence actions." *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 930 (Colo. 1997) (emphasis added); *see also, e.g.*, *Connes v. Molalla Transp. Sys., Inc.*, 817 P.2d 567, 572 (Colo. App. 1991) (observing that federal highway safety regulation could support a negligence per se claim). As for guidelines, the Court is unaware of any authority permitting a negligence per se claim based on a non-binding guideline. But Plaintiffs' allegations do not suggest that they assert such a theory here. *See* [Doc. 24 at ¶¶ 152–55, 196 (asserting negligence per se based on failure to comply with *regulations* promulgated under HIPAA)]. And to the extent Plaintiffs do rely on non-binding guidelines and industry standards, those sources of authority may still serve as evidence of the standard of care, even if they do not independently establish such a standard. *See Matlack*, 39 P.3d at 1167 (explaining that regulations, safety codes, and

industry standards may provide evidence of the standard of care).  In sum, Count Two **SURVIVES** insofar as it is asserted by Mr. Markowitz and based on alleged violations of HIPAA and its underlying regulations.

## II.     Count Three:  Breach of Implied Contract

To state a claim for breach of implied contract, Plaintiffs must allege:   "(1) the existence of a contract; (2) the plaintiff's performance of the contract or justification for nonperformance; (3) the defendant's failure to perform the contract; and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract."  *Bd. of Governors of Colo. State Univ. v. Alderman*, 563 P.3d 1205, 1212 (Colo. 2025).  With respect to the first element, the formation of a contract requires mutual assent and consideration.  *Univ. of Denv. v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024).  Mutual assent involves a meeting of the minds.  *Id.*  But "[a]s long as the parties agree to the essential terms, the omission of details will not prevent formation of a contract," *BGood Ventures LLC v. Hackett*, No. 15CA1212, 2017 WL 11931558, at *5 (Colo. App. 2017) (citing *Coulter v. Anderson*, 357 P.2d 76, 80 (Colo. 1960)).  And because an implied contract arises from the parties' conduct, *Alderman*, 563 P.3d at 1212–13, the existence of an implied contract is typically a question of fact for a jury to decide, *Owen-Brooks II*, 2024 WL 4338133, at *13 (citing *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 827 (Colo. App. 1990)).

Defendants argue that Plaintiffs fail to allege the existence of an implied contract. [Doc. 28 at 24–25].  Specifically, they assert that Plaintiffs do not allege mutual assent to an agreement for adequate cybersecurity, nor that Plaintiffs ever provided consideration for such an agreement.  [*Id.*].

19

Defendants' arguments ask the Court to resolve a fact issue that cannot be decided at this stage. Plaintiffs allege that Defendants required them to provide PII and PHI as a condition of receiving medical treatment. [Doc. 24 at ¶ 202]. They also allege that Defendants published policies asserting that they would take adequate steps to maintain the security of Plaintiffs' personal information. [*Id.* at ¶¶ 19–24, 204]. Based on these representations, Plaintiffs understood that Defendants would "use adequate cybersecurity measures" to protect the PII and PHI. [*Id.* at ¶ 204]. Defendants counter that there is no allegation that they shared that understanding, [Doc. 28 at 24], but that overlooks the fact that it was Defendants who wrote the privacy policies and requested patients' PII and PHI in the first place. Nor did Plaintiffs need to provide separate consideration, beyond their payments for services, to imply a contract for adequate data protection. "Under Colorado law, every contractual obligation need not be mutual as long as each party has provided some consideration for the contract." *Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249, 1255 (Colo. App. 2001). In other words, Plaintiffs' payments to Defendants could serve as consideration for both a promise of medical services and a promise to secure Plaintiffs' data. *See* Restatement (Second) of Contracts § 80 cmt. a (A.L.I. 1981, Oct. 2024 update). As Plaintiffs point out, other courts have declined to dismiss implied contract claims based on similar allegations. [Doc. 31 at 15]; *see, e.g.*, *Owen-Brooks I*, 2024 WL 4338133, at *13 (Colorado law); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1247–48 (D. Colo. 2018) (Colorado law); *Smallman*, 638 F. Supp. 3d at 1195 (applying Nevada law and collecting other federal cases). The Court concurs with these decisions and concludes that Plaintiffs have

20

plausibly alleged the existence of an implied contract for Defendants to adequately protect their PII and PHI.

Defendants' alternative arguments are also unpersuasive.  They briefly suggest that Plaintiffs fail to allege a breach of an implied contract.  [Doc. 28 at 24].  But they do not meaningfully develop this point.  And, regardless, the Court must take as true Plaintiffs' allegations that Defendants failed to maintain adequate cybersecurity for their PII and PHI.  *See* [Doc. 24 at ¶¶ 148–55, 213].  Defendants further argue, again in conclusory terms, that their damages and causation arguments against the negligence claims apply to the contract claim with equal force.  [Doc. 24 at 24].  But this is no basis for dismissal of Count Three, because Colorado law permits a party to recover nominal damages for breach of contract, even if there were no actual damages.  *See SRS Acquiom Inc. v. PNC Fin. Servs. Grp., Inc.*, No. 19-cv-02005-DDD-SKC, 2020 WL 3250186, at *3 (D. Colo. Mar. 26, 2020) (applying Colorado law).  While the Court's above rulings on damages in the tort context may eventually inform an analysis of what damages are available in contract, the Court declines to take up the issue at this juncture without specific briefing from the Parties.

In sum, Plaintiffs have adequately alleged a claim for breach of implied contract. The Motion is respectfully **DENIED** as to Count Three.

## III.    Count Four:  Invasion of Privacy

Defendants next argue that Plaintiffs fail to adequately allege any theory for an invasion of privacy claim.  [Doc. 28 at 25–27].  "In Colorado, 'invasion of privacy' encompasses three separate torts:  (1) unreasonable intrusion upon the seclusion of another ('seclusion');  (2) unreasonable publicity given to another's private life

21

('disclosure'); and (3) appropriation of another's name or likeness ('appropriation')."
*Pearson v. Kancilia*, 70 P.3d 594, 598–99 (Colo. App. 2003) (citing *Denv. Publ'g Co. v. Bueno*, 54 P.3d 893, 897 (Colo. 2002)).  The first two types of privacy claims—seclusion and disclosure—are relevant here.

To state a claim for invasion of privacy based on seclusion, Plaintiffs must allege "that another has intentionally intruded, physically or otherwise, upon the plaintiff's seclusion or solitude, and that such intrusion would be considered offensive by a reasonable person."  *Doe v. High-Tech Inst.*, 972 P.2d 1060, 1065 (Colo. App. 1998) (citing Restatement (Second) of Torts ("Restatement of Torts") § 625B (A.L.I. 1981).  By contrast, an invasion of privacy claim based on disclosure requires Plaintiffs to allege the following elements:

> (1) the fact or facts disclosed must be private in nature; (2) the disclosure must be made to the public; (3) the disclosure must be one which would be highly offensive to a reasonable person; (4) the fact or facts disclosed cannot be of legitimate concern to the public; and (5) the defendant acted with reckless disregard of the private nature of the fact or facts disclosed.

*Robert C. Ozer, P.C. v. Borquez* (*Ozer*), 940 P.2d 371, 377 (Colo. 1997).  The Court addresses these claims in turn.

## A.    Intrusion upon Seclusion

With respect to the seclusion claim, Defendants argue that Plaintiffs fail to allege that Defendants intentionally intruded on their privacy.  [Doc. 28 at 26].  Plaintiffs counter that individuals act intentionally when they "know that their conduct will almost certainly cause an invasion of privacy."  [Doc. 31 (quoting Colo. Jury Instructions, Civ. § 28:3 (4th ed., Apr. 2025 update)].  Although no Colorado court has approved this approach for a seclusion claim, the Court agrees with Plaintiffs that intent may be found where an actor

"believes that the consequences are substantially certain to result from [an action]." Restatement of Torts § 8A; *see also, e.g.*, *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994) (applying "substantially certain" standard to claims for intentional infliction of emotional distress); *Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 392 (Colo. 2001) (same for intentional nuisance claim).

Yet Plaintiffs do not offer any non-speculative allegations that Defendants, by maintaining inadequate data security, actually knew or believed that the theft and disclosure of Plaintiffs' data was substantially certain to occur. Rather, they merely allege that Defendants knew or should have known that maintaining inadequate cybersecurity placed their patients' data at risk. [Doc. 24 at ¶¶ 135–39]. Those allegations may establish recklessness, but they do not plausibly allege substantial certainty. *Cf. Van Wyk*, 27 P.3d at 392 ("[A]n invasion [of property] is not 'intentional' even though a defendant realizes or should realize that his conduct involves a serious risk or likelihood of causing the invasion." (citing Restatement of Torts § 825 cmt. c)). The Court concurs with the numerous federal courts that have reached this conclusion in similar cases. *See, e.g.*, *Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754, 770 (N.D. Iowa 2024); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 646 (N.D. Cal. 2024); *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1377 (N.D. Ga. 2021). Count Four is respectfully **DISMISSED** insofar as it asserts a seclusion claim.

## B.     Disclosure of Private Facts

The Court reaches a different conclusion as to Plaintiffs' disclosure claim. Defendants assert that this claim requires Plaintiffs to allege that Defendants took an "intentional action" to "publish" their data. [Doc. 28 at 26]. They cite no authority for this

23

proposition.  Plaintiffs correctly respond that a disclosure claim requires only a mental state of "reckless disregard."[8]  [Doc. 31 at 19 (quoting *Ozer*, 940 P.2d at 377)]; *see also Fire Ins. Exch. v. Sullivan*, 224 P.3d 348, 353 (Colo. App. 2009) (reiterating, based on *Ozer*, that "recklessness is the mental state" for a disclosure claim).  And to the extent Defendants are hinting at a personal participation requirement in a disclosure claim, *Ozer* foreclosed that too:  "We note that public disclosure may occur where the defendant merely initiates the process whereby the information is eventually disclosed to a large number of persons."  940 P.2d at 377 n.7 (citing *Beaumont v. Brown*, 257 N.W.2d 552, 530 (Mich. 1977)).  The Court finds that Plaintiffs have plausibly alleged that Defendants recklessly initiated the process that led to disclosure by failing to follow applicable standards for data security even though they knew or should have known of the risk of cyberattacks.  *See* [Doc. 24 at ¶¶ 135–39, 142–51].

Defendants also challenge the "disclosure" element.  [Doc. 28 at 26–27].  This requirement "connotes publicity, which requires communication to the public in general or to a large number of persons, as distinguished from one individual or a few."  *Ozer*, 940 P.2d at 377.  Defendants do not dispute that publication of Plaintiffs' data on the dark web would qualify as disclosure.  Instead, they focus on Plaintiffs' allegations that their data "has already been published—or will be published imminently—by cybercriminals on the Dark Web."  [Doc. 28 at 26]; *see, e.g.*, [Doc. 24 at ¶¶ 47, 228].  Defendants argue that these allegations imply that publication has not yet occurred.  *See* [Doc. 33 at 2 n.3].

---

[8] The cases cited by Defendants, [Doc. 28 at 26 n.57], all involved claims that require an intentional mental state, *see, e.g.*, *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-02904, 2023 WL 8540911, at *6–7 (D.N.J. May 5, 2023).

This argument misses Plaintiffs' specific factual allegation that their PII and PHI was "[f]ully published" on the dark web shortly after the Data Breach.  [Doc. 24 at ¶ 45]. While Plaintiffs' assertions that their data could be "published imminently" arguably contradicts this allegation, the Court credits the specific allegation of actual publication over the more boilerplate allegations regarding possible imminent publication.  And while Defendants suggest that there is "there is no actual evidence" of publication, [Doc. 28 at 27], that argument belongs at summary judgment.  Thus, viewing the allegations in the light most favorable to Plaintiffs, the Court respectfully concludes that Plaintiffs have plausibly alleged a claim for invasion of privacy based on disclosure.  The Motion is **DENIED** as to this portion of Count Four.

## IV.     Count Five:  Unjust Enrichment

In Colorado, a party asserting an unjust enrichment claim must allege that "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation."  *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008).

Plaintiffs' theory is that they paid Defendants with the understanding that Defendants would adequately protect their PII and PHI, but Defendants instead chose to use "cheaper, ineffective security measures" to increase their profits.  [Doc. 24 at ¶¶ 236–38].  Courts have referred to this as an "overpayment" theory of unjust enrichment.  *See, e.g.*, *Gordon*, 344 F. Supp. 3d at 1248–49 (dismissing similar unjust enrichment claim). Defendants ask the Court to follow *Gordon* and other decisions rejecting this theory, because there are no non-conclusory allegations that this transaction conferred any distinct benefit on Defendants that would be unfair for them to retain.  [Doc. 28 at 27–29].

Plaintiffs argue that this case is distinguishable from *Gordon*, which involved payment information provided through food purchases. [Doc. 31 at 21–22]; *Gordon*, 344 F. Supp. 3d at 1249. Fertility treatment, on the other hand, requires disclosure of detailed personal information, and patients reasonably expect that their "costly fertility fees" will also cover their provider's "adher[ence] to robust, HIPAA-compliant cybersecurity standards, professional licensing standards, and medical ethics." [Doc. 31 at 21–22].

Plaintiffs' "expectations" and "understandings" about Defendants' data security do not state a plausible unjust enrichment claim. Plaintiffs fail to point to an actual, distinct benefit that Defendants received for data security alone. As Plaintiffs admit, "they paid substantial fees *for fertility treatment services*" while also expecting a certain level of data security. [Doc. 31 at 22 (emphasis added)]. But there are no factual allegations that the price Plaintiffs paid was actually tied to the level of data security they expected or Defendants provided. For instance, Plaintiffs do not allege that they paid a premium for cybersecurity or that they understood any specific portion of their fees to cover cybersecurity. *See Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust enrichment claim where plaintiff "paid for food products" but "did not pay for a side order of data security"); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) (dismissing unjust enrichment claim where plaintiff did not "allege that any specific portion of his subscriber fee went toward data protection"). Nor is the Court persuaded by the fact that Defendants were required by HIPAA or other standards to protect Plaintiffs' PII and PHI; every merchant who accepts a customer's credit card information is likely under a similar, if less heavily regulated, duty to protect that information from unauthorized disclosure. And Plaintiffs' conclusory contentions that they

"reasonably understood that a portion of the funds paid to Defendants would be used to pay for adequate cybersecurity and protection of PII/PHI," *see, e.g.*, [Doc. 24 at ¶¶ 53, 73, 92, 111, 203, 236], without more, is simply not enough.  At bottom, the Court agrees with Defendants that Plaintiffs fail to allege that they paid Defendants more than the services they received—medical or otherwise—were actually worth.  [Doc. 28 at 28]; *see also Gordon*, 344 F. Supp. 3d at 1249 ("Plaintiffs paid for burritos; Plaintiffs received burritos."); *cf. Owen-Brooks I*, 2024 WL 4338133, at *18 (concluding, in employment context, that plaintiffs "did not confer the cost-savings [from deficient cybersecurity] as a benefit; rather, [d]efendant conferred that benefit upon itself").

The Court respectfully concludes that Plaintiffs have not plausibly alleged that they conferred a benefit on Defendants that would be unjust for Defendants to retain.  The Motion is **GRANTED** as to Count Five, and Count Five is **DISMISSED**.

## V.    Count Six:  Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, Plaintiffs must allege that "(1) that the defendant was acting as a fiduciary of the plaintiff; (2) that the defendant breached a fiduciary duty to the plaintiff; (3) that the plaintiff incurred damages; and (4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages."  *Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1172 (10th Cir. 2008) (citing *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993)).  "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  *Moses v. Diocese of Colo.*, 863 P.2d 310, 321 (Colo. 1993) (quoting Restatement of Torts § 874 cmt. a (A.L.I. 1979)).  While some fiduciary relationships are recognized as a matter of law, others arise from

the circumstances of the parties' relationship. *Accident & Injury Med. Specialists, P.C. v. Mintz*, 279 P.3d 658, 663 (Colo. 2012). For instance, a fiduciary duty may exist where one party occupies a superior position over another and assumes "a duty to act in the dependent party's best interest." *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 151 (Colo. 2007). If the parties' relationship is not recognized by law as a per se fiduciary relationship, "[t]he existence of the fiduciary relationship is a question of fact for the jury." *Moses*, 863 P.2d at 322.

### A.    Existence of Fiduciary Duty

Because the Parties' briefing chiefly focuses on the existence of a fiduciary duty, the Court begins its analysis there. [Doc. 28 at 30–32; Doc. 31 at 22–24]. Under Colorado law, "[a] fiduciary relationship exists when 'there is special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to interests of one reposing the confidence.'" *Meyer v. Schwartz*, 638 P.2d 821, 822 (Colo. App. 1981) (citation omitted). The Parties tacitly agree that Colorado has not recognized a physician-patient relationship as a fiduciary relationship as a matter of law, so the remaining inquiry is whether Plaintiffs have plausibly alleged facts to support a fiduciary relationship based on the circumstances of the Parties' relationship. *See id.* (observing that the existence of a fiduciary or confidential relationship ordinarily involves questions of fact). Defendants argue that a duty to maintain adequate cybersecurity measures would fall outside the scope of any fiduciary relationship they had with Plaintiffs. [Doc. 28 at 30–31]. A contrary rule, Defendants predict, would cause an "absurd" explosion of fiduciary relationships between businesses and every customer who provides payment information. [*Id.* at 31].

28

Defendants' slippery-slope argument fails to account for the specific factual allegations at issue here.  As Plaintiffs point out, the Parties' alleged relationship is plainly distinguishable from cases holding that "guardian[ship] of personal information" generally does not engender a fiduciary relationship.  [Doc. 31 at 23–24]; *see, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1202–03 (D. Or. 2016) (no fiduciary relationship between health insurer and insureds).  And this Court recognizes that purchasing medical care is, by nature, distinct from purchasing a product, such as a burrito.  Viewed in the light most favorable to Plaintiffs, the factual allegations indicate that Plaintiffs placed themselves in a position of vulnerability, literally and figuratively, when receiving fertility services from Defendants.  As a prerequisite to such treatment, Defendants required Plaintiffs to provide a comprehensive array of personal financial and medical information, including highly "intimate reproductive information." [Doc. 31 at 24; Doc. 24 at ¶¶ 28, 202].  Once Plaintiffs disclosed that information to Defendants, only Defendants had the ability to appropriately safeguard the PII and PHI within their control.  Indeed, Plaintiffs claim that federal law required Defendants to do so. At this early stage, it is plausible that the Parties formed a fiduciary relationship that included a duty for Defendants to act in Plaintiffs' best interests when handling their PII and PHI.

Defendants also argue that Plaintiffs fail to allege that they "abused any position of unique trust" by placing their interests ahead of Plaintiffs' and fail to distinguish between duties owed by IVI and Conceptions.  [Doc. 28 at 30–32].  Neither of these arguments tips the scales at this juncture.  Defendants cite no authority for the proposition that a party suing for breach of fiduciary duty must show that the fiduciary acted for its own

benefit, rather than merely demonstrating that the dependent party suffered an injury. [*Id.* at 30]. While a fiduciary acting out of self-interest might typically be the case, such a showing is not an element of the claim. *See Goode v. Ramsaur*, No. 20-cv-00947-DDD-KAS, 2024 WL 3849756, at \*15 (D. Colo. Aug. 16, 2024), *recommendation adopted*, 2024 WL 4591414 (D. Colo. Sept. 3, 2024). Nor do Defendants explain why Plaintiffs needed to specifically allege the division of labor between IVI and Conceptions when making cybersecurity decisions. Plaintiffs allege that IVI wholly owns and operates Conceptions. [Doc. 24 at ¶ 13]. To the extent Defendants did not make cybersecurity decisions jointly, Plaintiffs have plausibly alleged that IVI can be held vicariously liable for Conceptions's acts as IVI's agent. *See, e.g.*, *City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 622 (Colo. 2005) (reiterating that a principal is vicariously liable for agent's acts within scope of agency, and that existence of agency is a question of fact).

### B.    Damages and Causation

Finally, Defendants briefly suggest that their arguments regarding damages and causation in the negligence context can also apply to Plaintiffs' fiduciary-duty claim. [Doc. 28 at 29–30]. This argument assumes, without any support or explanation, that Plaintiffs' breach of fiduciary claims arise solely from a negligence theory and are thus subject to negligence damages rules. Absent any substantive briefing on this issue by Defendants, the Court declines to dismiss such claims, and the Motion is respectfully **DENIED** as to Count Six. *See In re HomeAdvisor, Inc. Litig.*, 491 F. Supp. 3d 879, 898 (D. Colo. 2020) (declining to dismiss claims where defendant made no "substantive legal argument" explaining why claims should be dismissed under applicable state law); *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("[Courts] will not consider . . . issues

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (quotation omitted)).

## VI.    Count Seven:  Colorado Consumer Protection Act

"The CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003).  Courts construe the CCPA liberally based on its remedial and deterrence purposes.  *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998).  To state a claim under the CCPA, Plaintiffs must allege

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Id.* at 235.  Defendants challenge the first, fourth, and fifth elements.  [Doc. 28 at 32–35].

### A.    Unfair or Deceptive Trade Practice

The Court begins with the first element—whether Defendants engaged in an unfair or deceptive trade practice.  As an initial matter, the Court agrees with Defendants that the heightened pleading standard in Federal Rule of Civil Procedure 9(b) applies at least to this element.  [Doc. 28 at 32–33].  Courts in this District consistently apply Rule 9(b) to CCPA claims that, like Plaintiffs' Count Seven, "attempt to allege knowing or reckless false statements."  *Wertz v. Clorox Servs. Co.*, No. 24-cv-01917-RMR-SBP, 2025 WL 684107, at *3 (D. Colo. Feb. 11, 2025) (collecting cases), *recommendation adopted*, 2025 WL 615178 (D. Colo. Feb. 26, 2025); *see also, e.g.*, *HealthONE of Denv., Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011); *Duran v. Clover Club Foods*

31

*Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985).  *But see Roland v. Letgo, Inc.*, No. 22-1456, 2024 WL 372218, at \*6 (10th Cir. Feb. 1, 2024) ("The heightened pleading standard under Federal Rule of Civil Procedure 9(b) may apply to this [CCPA] claim as well because it alleges fraud, but there is some question whether it applies to an alleged CCPA violation.").

Rule 9(b) requires a party alleging fraud to plead the circumstances constituting fraud "with particularity."  Fed. R. Civ. P. 9(b).  "Rule 9(b)'s purpose is to afford a defendant fair notice of a plaintiff's claims and the factual grounds supporting those claims."  *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (cleaned up).  To meet this standard, a plaintiff generally must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Id.* at 1254 (quotation omitted).  But because Rule 9(b) does not prescribe an inflexible "preordained checklist of 'must have' allegations," the bottom-line inquiry is "whether the complaint, taken as a whole, sufficiently apprises the defendant of its involvement in the alleged fraudulent conduct."  *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1280 (10th Cir. 2023) (cleaned up).

Defendants argue that Plaintiffs fail to adequately allege a deceptive trade practice recognized by the CCPA.  [Doc. 28 at 33; Doc. 33 at 13–16].  The CCPA sets out a comprehensive list of deceptive trade practices.  *See* Colo. Rev. Stat. § 6-1-105(1).  Focusing on paragraph 255 of the Consolidated Complaint, Defendants argue that Plaintiffs "have not linked" the conduct alleged in that paragraph to any of the specific deceptive practices defined in the CCPA.  [Doc. 28 at 33].  Paragraph 255 alleges that Defendants violated the CCPA misleading Plaintiffs as to the adequacy of their

32

cybersecurity and, after the Data Breach, misleading Plaintiffs as to the extent of the Data Breach. [Doc. 24 at ¶ 255]. Building on this allegation and others, Plaintiffs respond that "Defendants made 'a false representation as to the characteristics' of their services as prohibited by Colo. Rev. Stat. § 6-1-105(1)(e) and engaged in deceptive and deliberately misleading practices as prohibited by Colo. Rev. Stat. § 6-1-105(1)(rrr)." *See* [Doc. 31 at 26–27]. Defendants reply that Plaintiffs failed to identify those subsections in their Consolidated Complaint and that Plaintiffs fail to adequately allege any violations of those subsections. [Doc. 33 at 14–15].

In evaluating Plaintiffs' allegations, the Court will not narrow its review in the manner that Defendants request. To the extent Defendants attempt to limit the analysis to the allegations in paragraph 255, they ignore the Tenth Circuit's instruction that a plaintiff's allegations should be "taken as a whole." *Clinton*, 63 F.4th at 1280. The Court also respectfully disagrees that Plaintiffs needed to plead the specific statutory definitions of deceptive trade practices that they believe are relevant. Federal pleading standards require a plaintiff to plead facts—not legal theories[9]—that state a plausible claim and afford the defendant fair notice of the claim and its factual basis. *See Twombly*, 550 U.S. at 555–57; *George*, 833 F.3d at 1256. Having pleaded facts describing the conduct that they believe was unlawful under the CCPA, Plaintiffs properly argued in their response brief that the alleged conduct constitutes a deceptive trade practice as a matter of law.

---

[9] As the Supreme Court has explained, "[t]he federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (quoting 5 Wright & Miller's Federal Practice & Procedure § 1219 (3d ed. 2004)); *see also Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument.").

*See Shekarchian v. Maxx Auto Recovery, Inc.*, 487 P.3d 1026, 1033 (Colo. App. 2019) ("[W]hether the challenged conduct constitutes an unfair or deceptive trade practice is a question of law . . . .").

Turning to the factual allegations themselves, the Court finds that Plaintiffs have sufficiently alleged a deceptive trade practice under the CCPA. Rather than a "threadbare recital[]" of the requirement that Defendants employed an unlawful trade practice, *Iqbal*, 556 U.S. at 678, Plaintiffs allege (1) several specific representations by Defendants that their data security practices were adequate, and (2) several ways in which Defendants' actual data security practices were inadequate. *See* [Doc. 24 at ¶¶ 21–24, 148–55]. Taken as true, these allegations plausibly make out a deceptive trade practice based on a "knowing[] or reckless[] . . . false representation as to the characteristics . . . of . . . services," Colo. Rev. Stat. § 6-1-105(1)(e), or the "knowing[] or reckless[] engage[ment] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice," § 6-1-105(1)(rrr).

Resisting this conclusion, Defendants contend that Plaintiffs provide no factual allegations indicating that any of Defendants' statements were "actually false." [Doc. 33 at 15]. The Court understands Defendants' point to be that Plaintiffs do not allege any specific technical or operational shortcomings in Defendants' data security practices and instead rely on allegations that, "upon information and belief," Defendants failed to follow certain industry standard practices that would have prevented the Data Breach. *See* [Doc. 24 at ¶¶ 148–51]. Even assuming this view of the Consolidated Complaint is correct, it does not doom Plaintiffs' CCPA claim. Under the heightened Rule 9(b) standard, "courts may consider whether any pleading deficiencies resulted from the

34

plaintiff's inability to obtain information in the defendant's exclusive control." *George*, 833 F.3d 1242 at 1255 (collecting cases). Thus, "[a]llegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992). And here, Defendants' cybersecurity practices are presumably non-public information that would be within their exclusive control. It is unclear how Plaintiffs could provide more detail about Defendants' cybersecurity than what is set out in the Consolidated Complaint, and the Court finds that Plaintiffs' allegations sufficiently apprise Defendants of their role in the alleged unlawful conduct. *See Clinton*, 63 F.4th at 1280. The Court respectfully concludes that Plaintiffs have adequately alleged, with particularity, that Defendants engaged in a deceptive trade practice.

### B.    Causation and Injury

Defendants next incorporate their arguments regarding causation and injury in the negligence context. [Doc. 28 at 35]. With respect to injury, these arguments are inapposite. The CCPA's injury requirement incorporates the standing doctrine used by Colorado courts, not the injury element of a negligence claim. *See Hall*, 969 P.2d at 230–31, 236; *see also Wimberly v. Ettenberg*, 570 P.2d 535, 538 (Colo. 1977). Because Defendants have expressly disclaimed any challenge to Plaintiffs' standing to sue, [Doc. 28 at 20 n.35], the Court need not go further, *see also supra* note 3.

As for causation, the Court agrees that its earlier causation analysis, *see supra* at 15, requires dismissal of Plaintiffs' CCPA claims to the extent they rely on post-Data Breach conduct. Plaintiffs claim that the relevant injury-in-fact for their CCPA claim was

their payments to Defendants for treatment.  [Doc. 31 at 27].  Assuming without deciding that this constitutes an injury-in-fact under Colorado law, the Court cannot conclude that Defendants' post-breach conduct could have plausibly caused Plaintiffs' pre-breach injuries under any model of causation.  *See Hall*, 969 P.2d at 238 (requiring a "causal link" between deceptive trade practices and injury).  Nor do Plaintiffs address this point.  Instead, they contend that Defendants' representations regarding data security caused them to pay Defendants for treatments.  [Doc. 31 at 27–28].  Defendants, for their part, do not challenge this theory of causation and injury.  The Court declines to make either Party's arguments for them.

Accordingly, Count Seven is respectfully **DISMISSED** insofar as it relies on any alleged deceptive conduct after the Data Breach, and the Motion is **GRANTED** as to this portion of Count Seven.  The Motion is **DENIED** as to the remainder of Count Seven.

## VII.    Count Eight:  Declaratory Judgment

Defendants also ask the Court to dismiss Plaintiffs' claim for declaratory relief.  [Doc. 28 at 36–37].  The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  But "the Act stipulates only that district courts 'may'—not 'must'—make a declaration on the merits of [a] controversy."  *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008).  In other words, the decision to hear a declaratory judgment claim is within the district court's discretion.  *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995).  In the Tenth Circuit, district courts weigh several case-specific factors,

sometimes called the *Mhoon* factors, in deciding whether to hear a declaratory judgment
claim:

> [1] whether a declaratory action would settle the controversy; [2] whether it
> would serve a useful purpose in clarifying the legal relations at issue; [3]
> whether the declaratory remedy is being used merely for the purpose of
> 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; [4]
> whether use of a declaratory action would increase friction between our
> federal and state courts and improperly encroach upon state jurisdiction;
> and [5] whether there is an alternative remedy which is better or more
> effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (quotation
omitted) (brackets in original).  Courts in this District have also considered a sixth factor:
"whether the declaratory judgment action is 'independent of and separable from the
underlying action.'" *Acuity v. Kinsale Ins. Co.*, 750 F. Supp. 3d 1229, 1242 (D. Colo. 2024)
(quoting *Const. Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 561 (Colo. 1996)).

Defendants argue that a declaratory judgment claim is unnecessary here because
Plaintiffs' injuries have already occurred, and their legal rights will be resolved through
their other claims.  [Doc. 28 at 36–37].  Plaintiffs respond that Count Eight is not
duplicative of their other claims.  [Doc. 31 at 28–29].  Plaintiffs assert that the PII and PHI
in Defendants' possession remains at risk, so they request prospective relief that would
require Defendants to adopt adequate data security measures.  [*Id.*; Doc. 24 at ¶¶ 265–
67].  Defendants do not address this point in their reply brief.  *See* [Doc. 33].

The Court respectfully declines to dismiss Count Eight at this time.  Although the
Court agrees with Defendants that Plaintiffs' other claims are likely to clarify the Parties'
legal rights, it appears that Plaintiffs seek certain forward-looking declaratory relief that
will not be available through their other claims.  That distinguishes this case from the
cases cited by Defendants, in which the plaintiffs' non-declaratory claims would afford

them all the relief they sought. *See, e.g.*, *Acuity*, 750 F. Supp. 3d at 1242–1244 (dismissing declaratory judgment claim where plaintiff sought declaration that it was entitled to contribution, but separate claim for contribution would "necessarily" resolve that question and provide plaintiff a "more complete remedy than a mere declaration"). Thus, as relevant to the first, second, and fifth *Mhoon* factors,[10] Plaintiffs' claim for declaratory relief will settle a distinct portion of the controversy, serve a useful purpose, and provide a remedy for which there is no better alternative. The Court concludes, in its discretion, that dismissal of the declaratory claim is unwarranted at this juncture. The Motion is respectfully **DENIED** as to Count Eight.

## VIII.    Punitive Damages

Finally, Defendants ask the Court to dismiss Plaintiffs' request for punitive damages. [Doc. 28 at 37–38]. Defendants contend that Plaintiffs have not alleged facts justifying punitive damages, and that Plaintiffs have also failed to comply with the procedural requirements for requesting punitive damages under Colorado law. [*Id.* at 38 (citing Colo. Rev. Stat. 13-21-102(1.5)(a))]. Plaintiffs respond that if the Court dismisses their prayer for punitive damages for failure to comply with § 13-21-105(1.5)(a), the dismissal should be without prejudice. [Doc. 31 at 30].

As Plaintiffs tacitly concede, Colorado law does not permit a claim for punitive damages to be "included in any initial claim for relief." Colo. Rev. Stat. § 13-21-102(1.5)(a). Instead, such a claim "may be allowed by amendment to the pleadings only after" the parties exchange initial discovery disclosures and "the plaintiff establishes prima

---

[10] Given that there is no related litigation in another forum, the other factors appear to be inapplicable. *See Acuity*, 750 F. Supp. 3d at 1244 & n.7.

facie proof of a triable issue." *Id.* Plaintiffs have not complied with that procedure here. They have not sought leave to amend, and there is no indication that the Parties have completed initial disclosures. *See* [Doc. 23 (Judge Chung's order staying discovery pending this Court's ruling on the Motion)]. Nor could the Court decide, on the current record, whether Plaintiffs have established "prima facie proof of a triable issue" on punitive damages. Accordingly, Plaintiffs' request for punitive damages is **DISMISSED without prejudice**. Plaintiffs may renew this request in accordance with § 13-21-102(1.5)(a).

**CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that:

(1)   Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint [Doc. 28] is **GRANTED in part** and **DENIED in part** as set forth herein;

(2)   Count One is **DISMISSED without prejudice**[11] except insofar as Mr. Markowitz pursues a claim based on his out-of-pocket expenses;

(3)   Count Two is **DISMISSED without prejudice** except insofar as Mr. Markowitz pursues a claim based on his out-of-pocket expenses and Defendants' alleged violation of HIPAA;

(4)   Count Four is **DISMISSED without prejudice** insofar as it asserts a claim for intrusion upon seclusion, but Count Four **SURVIVES** insofar as it asserts a claim for public disclosure of private facts;

(5)   Count Five is **DISMISSED without prejudice**;

---

[11] Dismissal with prejudice is appropriate where granting leave to amend would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Because Defendants do not argue that amendment of any of Plaintiffs' claims would be futile, the Court dismisses them without prejudice.

(6)    Count Seven is **DISMISSED without prejudice** only insofar as it relies on any alleged deceptive conduct after the Data Breach;

(7)    Counts Three, Six, and Eight **SURVIVE** in their entirety; and

(8)    Plaintiffs' prayer for punitive damages is **DISMISSED without prejudice**.

DATED:  April 28, 2026                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge